# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Docket No. 2:15-cr-00120-NT |
| | ) |
| WAYNE SUNDERLAND, JR., | ) |
| | ) |
| Defendant. | ) |

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

Defendant Wayne Sunderland has filed a motion for compassionate release ("**Def.'s Mot.**") (ECF No. 49). For the reasons stated below, the Defendant's motion is **DENIED**.

## BACKGROUND

On July 9, 2015, Defendant Wayne Sunderland, Jr., pleaded guilty to a one-count Information charging him with being a felon in possession of a firearm.[1] Information (ECF No. 16); Minute Entry (ECF No. 20). The Defendant's conviction resulted from a violent incident in Scarborough. Mr. Sunderland pulled up to a traffic light and fired a handgun into the occupied vehicle that was stopped alongside him. Prosecution Version 1 (ECF No. 19). After fleeing the scene at a high rate of speed

---

[1] At the time of the Defendant's guilty plea, he had been charged under the name "Sean Johnson," and "Wayne Sunderland" was listed as one of his aliases. Information (ECF No. 16). The Defendant has previously gone by the name "Sean Johnson" and possessed a false ID in that name, although his legal name is "Wayne Sunderland, Jr." Revised Presentence Investigation Report 3 n.1. Once it became clear that Sean Johnson was not the Defendant's legal name, defense counsel filed an unopposed motion to amend the case caption, [Def.'s] Mot. to Amend Case Caption (ECF No. 30), which was granted, Order (ECF No. 31). Although some of the conduct I describe occurred while the Defendant was going by the name "Sean Johnson," I will refer to him by his legal name throughout this order.

through a neighborhood, Mr. Sunderland parked in a driveway and ran into the woods. Revised Presentence Investigation Report ("**PSR**") ¶ 6. The police pursued Mr. Sunderland deeper into the woods and eventually apprehended him. PSR ¶ 7. The police subsequently recovered the handgun, which Mr. Sunderland had buried under some leaves. PSR ¶ 8. On November 19, 2015, I sentenced Mr. Sunderland to 120 months of imprisonment. Judgment (ECF No. 38).

Mr. Sunderland now seeks compassionate release based on the purportedly extraordinary and compelling circumstance that his elderly and ill mother (who is a cancer survivor) needs him to care for her. Def.'s Mot. 2. Mr. Sunderland explains that her caregiver (Mr. Sunderland's aunt) passed away, and he is now the only family member who might be able to care for his mother. Def.'s Mot. 2.

## ANALYSIS

Congress enacted the compassionate release statute[2] to allow district courts to modify sentences of imprisonment, as relevant here, upon finding that:

---

[2] Title 18, United States Code, Section 3582(c)(1)(A) governs "[m]odification of an imposed term of imprisonment." Prior to the passage of the First Step Act of 2018, only the Director of the Bureau of Prisons ("**BOP**") could move for modification of a sentence. *See United States v. Ruvalcaba*, 26 F.4th 14, 17 (1st Cir. 2022). In December of 2018, Congress amended § 3582(c) to allow inmates to seek a modification of an imposed term of imprisonment from the courts directly. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Section 3582 now provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons

(1) extraordinary and compelling reasons warrant modification, (2) the modification accords with the § 3553(a) sentencing factors, and (3) the modification is consistent with "applicable policy statements" of the Sentencing Guidelines. *See* 18 U.S.C. § 3582(c)(1)(A). I focus here on the question of whether there exists an extraordinary and compelling reason warranting Mr. Sunderland's release and whether the request accords with the § 3553(a) sentencing factors.

The compassionate release statute itself does not define what constitutes an "extraordinary and compelling reason[ ]" justifying a sentence modification. *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021); *see* 18 U.S.C. § 3582(c). However, the United States Sentencing Commission has done so in the Commentary to its policy statement on compassionate release, located at § 1B1.13 of the sentencing guidelines. In discussing family circumstances in subdivision (C) of the first Commentary note, the Commission notes that extraordinary and compelling reasons exist where there has been:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S. Sentencing Guidelines Manual § 1B1.13 Commentary n.1. The Commentary then provides in subdivision (D): "**Other Reasons.**—As determined by the Director

---

warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13.

The Defendant appears to invoke subdivision (C), Def.'s Mot. 1–2, although, by its terms, that subdivision does not apply. It only applies in the context of caring for minor children and spouses (or partners), not parents. Nevertheless, subdivision (D) remains as a catchall for situations involving "other" extraordinary and compelling reasons. By its terms, subdivision (D) only allows the Director of the Bureau of Prisons ("**BOP**") to consider whether "other" extraordinary and compelling reasons exist. However, this limitation predates Congress's enactment of the First Step Act, which granted incarcerated individuals the right to file motions for compassionate release in the event that the BOP declined or delayed doing so. *United States v. Saccoccia*, 10 F.4th 1, 3–4, 7 (1st Cir. 2021). Because the Sentencing Commission has lacked a quorum for the last several years, it has not yet had the opportunity to consider how the implementation of the First Step Act might affect its policy guidance in § 1B1.13. *Id.* at 7. As a result, this out-of-date policy statement is not currently applicable to prisoner-initiated motions. *United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022). And it is currently the case that "district courts—when adjudicating prisoner-initiated motions for compassionate release—have discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to

warrant compassionate release." *Id.* at 23. Although, the current policy statement may still "serve as a non-binding reference." *Id.*

This does not mean that I have unbounded discretion in evaluating whether the Defendant has put forward an extraordinary and compelling reason justifying his release. In particular, his asserted justification for why compassionate release is warranted must truly be "extraordinary" and "compelling." *See id.* A reason is "extraordinary" if it "is beyond the mine-run either in fact or in degree." *Canales-Ramos*, 19 F.4th at 566. Meanwhile, a "compelling" reason is one "that is both powerful and convincing." *Id.* at 567.

I take as true Mr. Sunderland's contentions that his mother is in need of care and that he is the only family member who could potentially care for her.[3] But I do not find the circumstances that Mr. Sunderland describes to be extraordinary or compelling. Regrettably, when a person is convicted of a felony, the felon is often not the only person who suffers. That person's family often pays the price for their loved one's wrongdoing. This case is no different. While it is sad that Mr. Sunderland's mother may have to bear some of the consequences of her son's wrongdoing, it is

---

[3]  I do note one oddity. Mr. Sunderland says that he has exhausted his administrative remedies because thirty days have elapsed since he filed a compassionate release request with the warden on October 5, 2021. "Urgent" Mot. to Grant Compassionate Release under 18 U.S.C. [§] 3582(c)(1)(A) ("**Def.'s Mot.**") 1 (ECF No. 49). If Mr. Sunderland's request was related to his mother, then I question why he waited seven months (since early November) to file this motion if his mother so desperately needed his care.

In the alternative, if Mr. Sunderland's October request was related to some other issue, it may be the case that he has not exhausted his administrative remedies, since he has not submitted a request to the warden related to this particular request. *See United States v. Valenta*, Criminal No. 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020) ("One of the purposes for requiring prisoners to exhaust their administrative remedies before bringing a claim in federal court is to give the BOP an opportunity to address the issue."). In the end, I can sidestep this issue. The exhaustion requirement is not jurisdictional, *see United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022), so I assume that the Defendant has exhausted his administrative remedies and proceed to the merits.

unfortunately a situation that is not "beyond the mine-run," nor is it a "powerful and convincing" reason justifying Mr. Sunderland's release.

I also note that in order to be able to grant Mr. Sunderland's motion I would need to determine under the §3553(a) factors that he did not pose a danger to the community were he to be released. *See United States v. West*, Docket No. 2:15-cr-00168-NT-003, 2022 WL 911256, at *2 (D. Me. Mar. 29, 2022). And I am not convinced that Mr. Sunderland does not remain such a danger. The conduct underlying his conviction was violent, and, after he fired his weapon, Mr. Sunderland sought to evade the police and conceal the gun. And this is also not the only time that Mr. Sunderland has flouted the law.

For example, in 2007, Mr. Sunderland was convicted of possession of a loaded firearm and resisting arrest after he was found in possession of a knife and a gun and fled from the police. PSR ¶ 27. Also in 2007, he was convicted of offenses involving the distribution of cocaine and bail jumping. PSR ¶¶ 28–29. And in 2012, while on probation for an earlier offense, Mr. Sunderland was involved in a traffic stop where he was found in possession of crack cocaine, and after he was put under arrest and placed into a police car, he escaped from the police car. PSR ¶ 30. Given this troubling history, I am not convinced that Mr. Sunderland does not remain a danger to the community.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for compassionate release is **DENIED** without prejudice.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated: June 6, 2022